**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JASMINE COX, on behalf of herself and other similarly situated female laborers, | |
| Plaintiff, | Case No. |
| v. | Judge |
| PERSONNEL STAFFING GROUP, LLC d/b/a MVP, | Magistrate Judge |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Jasmine Cox ("Plaintiff"), on behalf of herself and all other similarly situated female laborers of Personnel Staffing Group, LLC d/b/a MVP ("MVP") assigned to work by MVP at client companies of MVP, for her Complaint against MVP, states as follow:

**I.      INTRODUCTION**

1.      This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") for Defendant's discrimination against female laborers in MVP's practices of making assignments to work at various Chicago area companies. MVP is a temporary staffing agency that contracts with its client companies to provide temporary laborers to work at those client companies for a fee. Since at least July 5, 2014, Plaintiff sought work assignments from MVP to MVP's client companies but on one or more occasions was not assigned to a client company because of her gender.

2.      Plaintiff will seek to certify a class pursuant to Fed. R. Civ. P. 23(a) and (b) to pursue her Title VII claims on behalf of herself and similarly situated female laborers of MVP. This Complaint alleges MVP engaged in a pattern or practice of excluding or severely restricting job assignments for female laborers. As all referrals covered in this Complaint were made by MVP in Illinois pursuant to a pattern and practice of discriminatory assignments, the claims

1

encompassed by this action warrant certification as a class action.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331, arising under arising under 42 U.S.C. § 2000e, *et seq*.

4.     Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiff's claim occurred in this judicial district and as Defendant maintains its offices and transacts business within this jurisdiction.

5.     On April 30, 2015, Plaintiff filed a charge of discrimination against MVP and MVP's client companies. On September 12, 2016, the EEOC issued a Notice of the Right to Sue to Mr. Cox, attached hereto as Exhibit A.

6.     The case is timely filed.

## III.     PARTIES

**A.     Plaintiffs**

7.     Plaintiff Jasmine Cox:

    a.     is women and resides in this judicial district;

    b.     is and, at all relevant times, has been qualified to perform work for MVP;

    c.     is and, at all relevant times, has been qualified to perform work for MVP's client companies;

    d.     is and, at all relevant times, has been a laborer seeking work assignments from MVP.

**B.     Defendant**

8.     At all relevant times, Defendant MVP:

    a.     has been a corporation organized under the laws of the State of Florida;

    b.    has been located in and conducted business in Illinois and within this judicial district;

    c.    has been an "employment agency" as that term is defined by 42 U.S.C. § 2000e(c);

    d.    has been a day and temporary labor service agency as defined by the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq.*; and

    e.    has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b).

## IV. FACTUAL BACKGROUND

9. At all relevant times, from 300 days prior to the filing of Plaintiff's EEOC charge to the present, MVP has operated as an employment agency with branch offices located throughout Illinois.

10. MVP is in the business of providing third-party client companies with low- and moderately-skilled laborers to fill jobs on a daily basis.

11. MVP does not directly supervise the laborers it hires and assigns to work at its client companies.

12. MVP's contracts or agreements provide certain limitations on how its client companies are able to use MVP's laborers, such as restrictions on operating forklifts.

13. MVP acts as an agent of its client companies in recruiting, training, assigning and paying laborers to work at those client companies.

14. MVP's client companies act as joint employers with MVP of laborers assigned to work at each company's facilities in that each client company controls the manner in which the work is performed by MVP laborers and directly supervises laborers assigned by MVP.

15. As part of its business, MVP is constantly engaged in recruiting low- and moderately-skilled laborers to fill ongoing work orders. When a laborer seeks an assignment through MVP, such laborers are seeking to fill a daily job at any of the third-party client companies to which MVP supplies labor.

16. MVP permits individuals who walk into its Illinois-based branch offices to seek work assignments.

17. Laborers are eligible to be referred by MVP to work at its various client companies from the Illinois-based MVP branch offices, regardless of whether they request to be referred to a particular employer.

18. When a female laborers comes to the Illinois-based MVP branch offices seeking a work assignment, an MVP employee typically takes contact information for the individual and either refers the individual for employment or informs the individual that she will be contacted when a daily job becomes open to which she can be referred.

19. The jobs for which the Illinois-based MVP branch offices refer candidates do not typically require any special skills, training or qualifications.

20. From July 5, 2014 through the present, MVP referred for employment thousands of laborers to its client companies.

21. During the period of July 5, 2014 to the present, the Plaintiff sought work at one of MVP's Illinois-based branch offices on multiple occasions while work assignments were being made to MVP's client companies.

22. On those occasions when Plaintiff sought work assignments at the Illinois-based MVP branch offices, she were directed to put her names on sign-in sheets that indicated the order in which she had arrived.

23. Other female laborers similarly sought work assignments from one of MVP's Illinois-based branch offices during the period of July 5, 2014 to the present and were directed to put their names on sign-in sheets that indicated the order in which they had arrived.

24. On multiple occasions when Plaintiff came to an Illinois-based MVP branch offices to seek a work assignment, she waited in the branch office in an attempt to receive a work assignment.

25. During the period from July 5, 2014 to the present, Plaintiff observed that while she was present in the Waukegan office that typically about half or more of the laborers there seeking work assignments were female.

26. During the period from July 5, 2014 to the present, Plaintiff observed that, while she was present at the Waukegan office, many male laborers were assigned to work while female laborers were not assigned work.

27. On many of the occasions when the Plaintiff sought work at one of MVP's Illinois-based branch offices, she was not assigned to work even though there were assignments at MVP's client companies for which she was qualified.

28. Male laborers received work assignments to MVP's client companies before female laborers.

29. Male laborers were given assignments to MVP's client companies before female laborers even though the male laborers were no more qualified to perform the job.

30. Male laborers were given assignments to MVP's client companies before female laborers even when they arrived after the female laborers.

31. On information, male laborers were often assigned by MVP to fill higher paying positions than female laborers.

32. The Illinois-based MVP branch offices have a practice of retaining contact information and/or applications completed by candidates for referral for at least several months.

33. For the period of July 5, 2014 to the present, on many of the days when the Plaintiff was not present in the Illinois-based MVP branch offices, she was available for assignments at MVP's client companies.

34. On such days, Plaintiff was not contacted for work assignments even though there were assignments available at MVP's client companies for which she was qualified.

35. On information, male laborers were contacted for work assignments to MVP's client companies before female laborers.

36. Male laborers were contacted for work assignments MVP to MVP's client companies before female laborers even though they were no more qualified to perform the job.

37. Male laborers were contacted for work assignments MVP to MVP's client companies before female laborers even though they had been seeking work at MVP for less time.

38. Plaintiff has been, at all relevant times, equally qualified to work at MVP's client companies as male laborers who sought work at MVP and were given a work assignment at MVP's client companies.

39. Other female laborers who sought work assignments from MVP's Illinois-based branch offices were likewise equally qualified to work at MVP's client companies as male laborers who sought work at MVP and were given a work assignment at MVP's client companies.

40. MVP failed or refused to assign Plaintiff to work assignments at MVP's client companies because of her gender.

41. MVP failed or refused to assign other female laborers to work assignments at MVP's client companies because of their gender.

6

42. MVP dispatchers failed or refused to assign Plaintiff and other similarly situated female laborers to work at MVP's client companies because they were complying with a discriminatory request from MVP's client companies to only send male laborers to fill certain positions.

43. MVP's client companies often expressed its preference for male laborers to fill certain positions at its facility by using the code words "heavy" to indicate a preference for a male laborer.

## V. CLASS ACTION ALLEGATIONS

44. The Plaintiff's claim is susceptible to class certification pursuant to Rule 23(a) and (b)(3), Fed. R. Civ. P.

45. The Class is defined to include "All female laborers who sought work assignments through MVP's Illinois-based branch offices and were eligible to work at MVP's client companies at any time between July 5, 2014 and the date of judgment and who, on one or more occasion, were not assigned to work in certain positions at MVP's client companies by MVP."

46. Certification of the class and subclasses pursuant to Rule 23(a) and (b)(3) is warranted because:

   a. This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendant is located in this judicial district.

   b. The class is so numerous that joinder of all members is impracticable. Defendant employed in its labor pool thousands of individuals who sought work assignments through its Illinois-based branch offices from July 5, 2014 through the present.

    c.    One or more questions of law or fact are common to the class, including:

        (i)    Whether MVP has engaged in a pattern or practice of denying work assignments to female laborers because of their gender;

        (ii)    Whether MVP intentionally engaged in discriminatory assignments of male versus female laborers;

        (iii)    Whether MVP's client companies directed MVP to refrain from assigning female laborers to work in certain positions at MVP's client companies;

        (iv)    Whether MVP engaged in a practice of accommodating discriminatory requests by its client companies;

        (v)    Whether the conduct complained of herein constitutes a violation of Title VII;

        (vi)    Whether injunctive relief is warranted against MVP;

    d.    Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's Counsel is competent and experienced in litigating discrimination and other employment class actions;

    e.    The class representative and the members of the class have been subject to, and challenge, the same practices that are being challenged by the class;

    f.    Issues common to the class predominate over issues unique to individual class members and pursuit of the claims as a class action is superior to other available methods for the fair and efficient resolution of this controversy.

    g.    Adjudication of these claims as a class action can be achieved in a manageable manner.

47.    Pursuit of the claims set forth herein through a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

## COUNT I
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
### Plaintiff on behalf of herself and a class of similarly situated female laborers as against Defendant MVP
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 47 as though set forth herein.

48. This Count arises under Title VII for Defendant MVP's discriminatory practices in assigning laborers to its client companies, described more fully in paragraphs 9 - 43, *supra*, resulting in disparate treatment of Plaintiff and a class of female laborers.

49. As described more fully in paragraphs 9 - 43, *supra*,, Defendant MVP engaged in a pattern and practice of intentional discrimination against Plaintiff based on her gender thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

50. As described more fully in paragraphs 9 - 43, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against other similarly situated female laborers based on their gender, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

51. As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, Plaintiff and other similarly situated female MVP laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

52. Defendant MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff and the Class respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;

B.  enjoin Defendant MVP from continuing or permitting future violations of Title VII for gender discrimination against female laborers in the Class;

C.  enter a judgment in Plaintiff and the Class' favor and against Defendant MVP for back pay damages for Plaintiff and the Class in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  for such other relief as this Court deems just and equitable.

## COUNT II
### Violation of Title VII-Race-based Discrimination – Adverse Impact
**Plaintiff on behalf of herself and a class of similarly situated female laborers as against Defendant MVP**
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 52 as though set forth herein.

53. This Count arises under Title VII for Defendant MVP's policies and practices of assigning almost exclusively male laborers to fill certain positions, as described more fully in paragraphs 9 - 43, *supra*, resulting in a significant adverse impact on Plaintiff and a class of female MVP laborers.

54. Defendant MVP practice of assigning almost exclusively male laborers to fill certain positions at its client companies' facilities assign has caused a significant disparate impact on Plaintiff and other similarly situated female MVP laborers in obtaining work assignments at Defendant MVP.

55. As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, Plaintiff and other similarly situated female laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

WHEREFORE, Plaintiff and the Class respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;

B. enjoin Defendant MVP from continuing or permitting future violations of Title VII for gender discrimination against female laborers in the Class;

C. enter a judgment in their favor and against Defendant MVP for back pay damages for Plaintiff and the Class in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action; and

E. for such other relief as this Court deems just and equitable.

Respectfully submitted,

Dated: December 12, 2016

*/s/Christopher J. Williams*
Christopher J. Williams (ARDC #6284262)
Alvar Ayala (ARDC #6295810)
Workers' Law Office, P.C.
53 W. Jackson Blvd, Suite 701
Chicago, Illinois 60604
(312) 795-9121

Attorneys for Plaintiff