**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JASMINE COX, QUIANA MATTHEWS, KEEONA PERSON and MICHELLE GONGORA, on behalf of themselves and other similarly situated female laborers, | Case No. 16-cv-11282 |
| Plaintiffs, | Consolidated with 18-cv-03720 |
| v. | Judge Andrea R. Wood |
| PERSONNEL STAFFING GROUP, LLC d/b/a MVP, | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | |

**PERSONNEL STAFFING GROUP, LLC'S ANSWER AND**
**AFFIRMATIVE DEFENSES TO FIRST AMENDED CLASS ACTION COMPLAINT**

NOW COMES Defendant, PERSONNEL STAFFING GROUP, LLC d/b/a MOST VALUABLE PERSONNEL ("MVP"), by and through its undersigned counsel, and hereby submits its Answer and Affirmative Defenses to Plaintiffs' First Amended Class Action Complaint ("Complaint").

## I.  INTRODUCTION

1.     This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") for Defendant's discrimination against female laborers in MVP's practices of making assignments from an MVP dispatch office in Illinois to work at various client companies of MVP. MVP is a temporary staffing agency that contracts with its client companies to provide temporary laborers to work at those client companies for a fee. Since at least July 2014, Plaintiff Cox sought work assignments from MVP at MVP's Waukegan office to MVP's client companies but on one or more occasions was not assigned to a client company because of her gender. Since at least September 2014, Plaintiff Matthews sought work assignments from MVP at MVP's Elmwood Park office to MVP's client companies but on one or more occasions was not assigned to a client company because of her gender.  Since at least September 2014, Plaintiff Person sought work assignments from MVP at MVP's Cicero Park office to MVP's client companies but on one or more occasions was not assigned to a client company because of her gender. Since at least September 2015, Plaintiff Gongora sought work assignments from MVP at MVP's Waukegan office to MVP's client companies but on one or more occasions was not

assigned to a client company because of her gender.

**ANSWER:    The allegations contained in Paragraph 1 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP admits that Plaintiffs purport to bring this claim under Title VII, but denies all underlying allegations.**

2.      Plaintiffs will seek to certify a class pursuant to Fed. R. Civ. P. 23(a) and (b) to pursue their Title VII claims on behalf of themselves and similarly situated female laborers of MVP who sought work assignments from one or more of MVP's Illinois-based dispatch offices. This Complaint alleges MVP engaged in a pattern or practice of excluding or severely restricting job assignments for female laborers. As all referrals covered in this Complaint were made by MVP in Illinois pursuant to a pattern and practice of discriminatory assignments, the claims encompassed by this action warrant certification as a class action.

**ANSWER:    The allegations in Paragraph 2 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP states that it has no way to know what Plaintiff will "seek" in this lawsuit.  MVP denies that Plaintiffs are entitled to class certification under Rule 23(a) and (b) and denies all underlying allegations.**

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiffs' Title VII claim pursuant to 28 U.S.C. § 1331, arising under arising under 42 U.S.C. § 2000e, *et seq*.

**ANSWER:    The allegations contained in Paragraph 3 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP admits that this Court has jurisdiction over Plaintiffs' claims but denies all underlying allegations.**

4.      Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district and as Defendant maintain [sic] its offices and transact [sic] business within this jurisdiction.

**ANSWER:    The allegations contained in Paragraph 4 are legal conclusions to which no answer is required.  To the extent that an answer is required, MVP admits that venue is proper in the Northern District of Illinois but denies all underlying and remaining allegations.**

5.     On April 30, 2015, Plaintiff Cox filed a charge of discrimination against MVP and MVP's client companies. On September 12, 2016, the EEOC issued a Notice of the Right to Sue to Mr. [sic] Cox, attached hereto as Exhibit A.

**ANSWER:     MVP admits that Plaintiff Cox filed a charge of discrimination with the EEOC against MVP on April 30, 2015, but denies all underlying allegations.  MVP further admits that the EEOC issued a Right to Sue letter to Plaintiff Cox on or about September 12, 2016, but denies that Exhibit A contains an accurate copy of such Right to Sue Letter. MVP lacks knowledge or information regarding whether Plaintiff Cox filed other charges of discrimination against its client companies, as they are not the subject of this lawsuit, and on that basis, denies the remaining allegations in Paragraph 5.**

6.     On October 31, 2014, Plaintiff Qiana Matthews filed a charge of discrimination against MVP. On May 24, 2018, the EEOC issued a Notice of the Right to Sue to Ms. Matthews. Plaintiff Matthews' Notice of Right to Sue and EEOC charge are attached hereto as Exhibit B.

**ANSWER: MVP admits that Plaintiff Qiana Matthews filed a charge of discrimination with the EEOC against MVP and that the EEOC issued a Right to Sue letter to Plaintiff Matthews on or about May 24, 2018 but denies all underlying allegations.**

7.     On March 13, 2015, Plaintiff Keeona Person filed a charge of discrimination against MVP. On May 24, 2018, the EEOC issued a Notice of the Right to Sue to Ms. Person. Plaintiff Person's Notice of Right to Sue and EEOC charge are attached hereto as Exhibit C.

**ANSWER: MVP admits that Plaintiff Keeona Person filed a charge of discrimination with the EEOC against MVP and that the EEOC issued a Right to Sue letter to Plaintiff Person on or about May 24, 2018 but denies all underlying allegations.**

8.     On February 20, 2018, Plaintiff Michelle Gongora filed a charge of discrimination against MVP. On February 28, 2018, the EEOC issued a Notice of the Right to Sue to Ms. Gongora. Plaintiff Gongora's Notice of Right to Sue and EEOC charge are attached hereto as Exhibit D.

**ANSWER: MVP admits that the EEOC issued a Right to Sue letter to Plaintiff Michelle Gongora on or about February 28, 2018 but denies all underlying allegations.**

9.     The case is timely filed.

**ANSWER:    The allegation in Paragraph 9 is a legal conclusion to which no answer is required. To the extent that an answer is required, MVP admits that this lawsuit was timely filed from the date of the Right to Sue letters issued to Plaintiffs, but states that it lacks knowledge or information sufficient to form a belief as to whether Plaintiffs filed their charges of discrimination with the EEOC within the statute of limitations period.  MVP denies all underlying allegations.**

### III.      PARTIES

**A.    <u>Plaintiffs</u>**

10.    Plaintiff Jasmine Cox:
   a. is women [sic] and resides in this judicial district;
   b. is and, at all relevant times, has been qualified to perform work for MVP;
   c. is and, at all relevant times, has been qualified to perform work for MVP's client companies;
   d. is and, at all relevant times, has been a laborer seeking work assignments from MVP.

**ANSWER:    The allegations contained in Paragraph 10 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP states that it lacks knowledge or information sufficient to form a belief as to Plaintiff Jasmine Cox's gender or where she resides, or whether Plaintiff Cox is qualified to perform work for MVP or at MVP's client companies, and on that basis, denies those allegations.**

11.    Plaintiff Qiana Matthews:

   a. is women [sic] and resides in this judicial district;
   b. is and, at all relevant times, has been qualified to perform work for MVP;
   c. is and, at all relevant times, has been qualified to perform work for MVP's client companies;
   d. is and, at all relevant times, has been a laborer seeking work assignments from MVP.

**ANSWER: The allegations contained in Paragraph 11 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP states that it lacks knowledge or information sufficient to form a belief as to Plaintiff Qiana Matthew's gender or where she resides, or whether Plaintiff Matthews is qualified to perform work for MVP or at MVP's client companies, and on that basis, denies those allegations.**

12. Plaintiff Keeona Person:

    e. is women [sic] and resides in this judicial district;
    f. is and, at all relevant times, has been qualified to perform work for MVP;
    g. is and, at all relevant times, has been qualified to perform work for MVP's client companies;
    h. is and, at all relevant times, has been a laborer seeking work assignments from MVP.

**ANSWER: The allegations contained in Paragraph 12 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP states that it lacks knowledge or information sufficient to form a belief as to Plaintiff Keeona Person's gender or where she resides, or whether Plaintiff Person is qualified to perform work for MVP or at MVP's client companies, and on that basis, denies those allegations.**

13. Plaintiff Michelle Gongora:

    i. is women [sic] and resides in this judicial district;
    j. is and, at all relevant times, has been qualified to perform work for MVP;
    k. is and, at all relevant times, has been qualified to perform work for MVP's client companies;
    l. is and, at all relevant times, has been a laborer seeking work assignments from MVP.

**ANSWER: The allegations contained in Paragraph 13 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP states that it lacks knowledge or information sufficient to form a belief as to Plaintiff Michelle Gongora's**

gender or where she resides, or whether Plaintiff Gongora is qualified to perform work for

MVP or at MVP's client companies, and on that basis, denies those allegations.

**B.** **Defendant**

14. At all relevant times, Defendant MVP:
    e. has been a corporation organized under the laws of the State of Florida;
    f. has been located in and conducted business in Illinois and within this judicial district;
    g. has been an "employment agency" as that term is defined by 42 U.S.C. § 2000e(c);
    h. has been a day and temporary labor service agency as defined by the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq*.; and
    i. has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b).

**ANSWER:** **The allegations contained in Paragraph 14 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP admits that it "has been located in and conducted business in Illinois and within this judicial district." MVP denies that it is a corporation, but admits that it is a limited liability company organized under the laws of the State of Florida. MVP denies the remaining allegations in Paragraph 14.**

## IV.    FACTUAL BACKGROUND

15. At all relevant times, from 300 days prior to the filing of Plaintiff Matthews' EEOC charge to the present, MVP has operated as an employment agency with branch offices located throughout Illinois.

**ANSWER:** **MVP admits that at times during the period of January 4, 2014 to the present, MVP has operated a temporary labor service agency with offices in Illinois. MVP denies the remaining allegations in Paragraph 15.**

16. MVP is in the business of providing third-party client companies with low- and moderately-skilled laborers to fill jobs on a daily basis.

**ANSWER:** **MVP admits that it is a temporary labor service agency that provides temporary labor personnel services to third party clients. MVP denies the remaining**

**allegations in Paragraph 16.**

17.     MVP does not directly supervise the laborers it hires and assigns to work at its client companies.

**ANSWER:     MVP denies the allegations contained in Paragraph 17.**

18.     MVP's contracts or agreements provide certain limitations on how its client companies are able to use MVP's laborers, such as restrictions on operating forklifts.

**ANSWER:     The allegations contained in Paragraph 18 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations in Paragraph 18.**

19.     MVP acts as an agent of its client companies in recruiting, training, assigning and paying laborers to work at those client companies.

**ANSWER:     The allegations contained in Paragraph 19 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations in Paragraph 19.**

20.     MVP's client companies act as joint employers with MVP of laborers assigned to work at each company's facilities in that each client company controls the manner in which the work is performed by MVP laborers and directly supervises laborers assigned by MVP.

**ANSWER:     The allegations contained in Paragraph 20 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations contained in Paragraph 20.**

21.     As part of its business, MVP is constantly engaged in recruiting low- and moderately-skilled laborers to fill ongoing work orders. When a laborer seeks an assignment through MVP, such laborers are seeking to fill a daily job at any of the third-party client companies to which MVP supplies labor.

**ANSWER:     MVP admits that it recruits laborers to fulfill job assignments at third party client companies and that some laborers seek to go to any client company where there is an available job assignment.  MVP denies the remaining allegations in Paragraph 21.**

22.     MVP permits individuals who walk into its Illinois-based branch offices to seek work assignments.

**ANSWER:    MVP admits that individuals seek job assignments from MVP in person.  MVP denies the remaining allegations in Paragraph 22.**

23.     Laborers are eligible to be referred by MVP to work at its various client companies from the Illinois-based MVP branch offices, regardless of whether they request to be referred to a particular employer.

**ANSWER:    The allegations contained in Paragraph 23 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations in Paragraph 23.**

24.     When a female laborers [sic] comes to the Illinois-based MVP branch offices seeking a work assignment, an MVP employee typically takes contact information for the individual and either refers the individual for employment or informs the individual that she will be contacted when a daily job becomes open to which she can be referred.

**ANSWER:    MVP denies the allegations in Paragraph 24.**

25.     The jobs for which the Illinois-based MVP branch offices refer candidates do not typically require any special skills, training or qualifications.

**ANSWER:    MVP denies the allegations in Paragraph 25.**

26.     From January 4, 2014 through the present, MVP referred for employment thousands of laborers to its client companies.

**ANSWER:    MVP admits that, during periods from January 4, 2014 to the present, it placed individuals on job assignments at client companies of MVP.**

27.     During the period of January 4, 2014 to the present, the Plaintiffs sought work at one of MVP's Illinois-based branch offices on multiple occasions while work assignments were being made to MVP's client companies.

**ANSWER:    MVP lacks knowledge or information regarding when or where Plaintiffs sought job assignments or what job assignments were available when Plaintiffs sought job assignments, as Plaintiffs have not identified any specific dates (or years) when**

they sought work from MVP.  On that basis, MVP denies the allegations in Paragraph 27.

28.     From January 4, 2014 through the present, MVP referred for employment thousands of laborers to its client companies.

**ANSWER:     Because the allegation in Paragraph 28 is identical to the allegation contained in Paragraph 26, MVP hereby incorporates and realleges its Answer to Paragraph 26 as if fully set forth herein.**

29.     During the period of January 4, 2014 to the present, the Plaintiffs sought work at one of MVP's Illinois-based branch offices on multiple occasions while work assignments were being made to MVP's client companies.

**ANSWER:     Because the allegations in Paragraph 29 are identical to the allegations contained in Paragraph 27, MVP hereby incorporates and realleges its Answer to Paragraph 27 as if fully set forth herein.**

30.     Since at least July 2014, Plaintiff Cox sought work assignments from MVP at MVP's Waukegan office in Waukegan, Illinois, but on one or more occasions was not assigned to a client company because of her gender.

**ANSWER:     MVP lacks knowledge or information regarding when or where Plaintiff Cox sought job assignments or what job assignments were available when Plaintiff Cox sought job assignments, as Plaintiff Cox has not identified any specific dates (or years) when she sought work from MVP.  MVP denies that on one or more occasions Plaintiff Cox was not assigned to a client company because of her gender.**

31.     On those occasions when Plaintiff Cox sought work assignments at the Illinois-based MVP branch offices, she was directed to put her names on sign-in sheets that indicated the order in which she had arrived.

**ANSWER:     MVP lacks knowledge or information regarding when or where Plaintiff Cox sought job assignments or what job assignments were available when Plaintiff Cox sought job assignments, as Plaintiff Cox has not identified any specific dates (or years) when she sought work from MVP.  On that basis, MVP denies the allegations in Paragraph**

**31.**

32.     On many of the occasions when the Plaintiff Cox sought work at one of MVP's Illinois-based branch offices, she was not assigned to work even though there were assignments at MVP's client companies for which she was qualified.

**ANSWER:     MVP lacks knowledge or information regarding when or where Plaintiff Cox sought job assignments or what job assignments were available when Plaintiff Cox sought job assignments, as Plaintiff Cox has not identified any specific dates (or years) when she sought work from MVP.  On that basis, MVP denies the allegations in Paragraph 32.**

33.     On many of the days when the Plaintiff Cox was not present in the Illinois based MVP branch offices, she was available for assignments at MVP's client companies but was not contacted for an assignment.

**ANSWER:     MVP lacks knowledge or information sufficient to form a belief as to when Plaintiff Cox claims she was "available" for job assignments and on that basis, denies the allegations in Paragraph 33.**

34.     Since at least September 2014, Plaintiff Matthews sought work assignments from MVP at MVP's Elmwood Park office in Elmwood, Illinois but on one or more occasions was not assigned to a client company because of her gender.

**ANSWER:     MVP lacks knowledge or information regarding when or where Plaintiff Matthews sought job assignments or what job assignments were available when Plaintiff sought job assignments, as Plaintiff has not identified any specific dates (or years) when she sought work from MVP.  MVP denies that on one or more occasions Plaintiff Matthews was not assigned to a client company because of her gender.**

35.     On those occasions when Plaintiff Matthews sought work assignments at the Illinois-based MVP branch offices, she was directed to put her name on a sign-in sheet that indicated the order in which she had arrived.

**ANSWER:     MVP lacks knowledge or information regarding when or where Plaintiff Matthews sought job assignments or what job assignments were available when**

Plaintiff Matthews sought job assignments, as Plaintiff Matthews has not identified any specific dates (or years) when she sought work from MVP. On that basis, MVP denies the allegations in Paragraph 35.

36. On many of the occasions when the Plaintiff Matthews sought work at one of MVP's Illinois-based branch offices, she was not assigned to work even though there were assignments at MVP's client companies for which she was qualified.

**ANSWER: MVP lacks knowledge or information regarding when or where Plaintiff Matthews sought job assignments or what job assignments were available when Plaintiff Matthews sought job assignments, as Plaintiff Matthews has not identified any specific dates (or years) when she sought work from MVP. On that basis, MVP denies the allegations in Paragraph 36.**

37. On many of the days when the Plaintiff Matthews was not present in the Illinois-based MVP branch offices, she was available for assignments at MVP's client companies but was not contacted for an assignment.

**ANSWER: MVP lacks knowledge or information sufficient to form a belief as to when Plaintiff Matthews claims she was "available" for job assignments and on that basis, denies the allegations in Paragraph 37.**

38. Since at least September 2014, Plaintiff Person sought work assignments from MVP at MVP's Cicero office in Cicero, Illinois but on one or more occasions was not assigned to a client company because of her gender.

**ANSWER: MVP lacks knowledge or information regarding when or where Plaintiff Person sought job assignments or what job assignments were available when Plaintiff Person sought job assignments, as Plaintiff has not identified any specific dates (or years) when she sought work from MVP. MVP denies that on one or more occasions Plaintiff Person was not assigned to a client company because of her gender.**

39. On those occasions when Plaintiff Person sought work assignments at the Illinois-based MVP branch offices, she was directed to put her name on a sign-in sheet that indicated the

order in which she had arrived.

**ANSWER: MVP lacks knowledge or information regarding when or where Plaintiff Person sought job assignments or what job assignments were available when Plaintiff Person sought job assignments, as Plaintiff Person has not identified any specific dates (or years) when she sought work from MVP. On that basis, MVP denies the allegations in Paragraph 39.**

40. On many of the occasions when the Plaintiff Person sought work at one of MVP's Illinois-based branch offices, she was not assigned to work even though there were assignments at MVP's client companies for which she was qualified.

**ANSWER: MVP lacks knowledge or information regarding when or where Plaintiff Person sought job assignments or what job assignments were available when Plaintiff Person sought job assignments, as Plaintiff Person has not identified any specific dates (or years) when she sought work from MVP. On that basis, MVP denies the allegations in Paragraph 40.**

41. On many of the days when the Plaintiff Person was not present in the Illinois based MVP branch offices, she was available for assignments at MVP's client companies but was not contacted for an assignment.

**ANSWER: MVP lacks knowledge or information sufficient to form a belief as to when Plaintiff Person claims she was "available" for job assignments and on that basis, denies the allegations in Paragraph 41.**

42. Since at least September 2015, Plaintiff Gongora sought work assignments from MVP at MVP's Waukegan office in Waukegan, Illinois, but on one or more occasions was not assigned to a client company because of her gender.

**ANSWER: MVP lacks knowledge or information regarding when or where Plaintiff Gongora sought job assignments or what job assignments were available when Plaintiff Gongora sought job assignments, as Plaintiff has not identified any specific dates**

(or years) when she sought work from MVP. MVP denies that on one or more occasions Plaintiff Gongora was not assigned to a client company because of her gender.

43.     On those occasions when Plaintiff Gongora sought work assignments at the Illinois-based MVP branch offices, she was directed to put her name on a sign-in sheet that indicated the order in which she had arrived.

**ANSWER:     MVP lacks knowledge or information regarding when or where Plaintiff Gongora sought job assignments or what job assignments were available when Plaintiff Gongora sought job assignments, as Plaintiff Gongora has not identified any specific dates (or years) when she sought work from MVP.  On that basis, MVP denies the allegations in Paragraph 43.**

44.     On many of the occasions when the Plaintiff sought work at one of MVP's Illinois-based branch offices, she was not assigned to work even though there were assignments at MVP's client companies for which she was qualified.

**ANSWER:     To the extent that this allegation is referring to Plaintiff Gongora, MVP lacks knowledge or information regarding when or where Plaintiff Gongora sought job assignments or what job assignments were available when Plaintiff Gongora sought job assignments, as Plaintiff Gongora has not identified any specific dates (or years) when she sought work from MVP.  On that basis, MVP denies the allegations in Paragraph 44.**

45.     On many of the days when the Plaintiff Gongora was not present in the Illinois based MVP branch offices, she was available for assignments at MVP's client companies but was not contacted for an assignment.

**ANSWER:     MVP lacks knowledge or information sufficient to form a belief as to when Plaintiff Gongora claims she was "available" for job assignments and on that basis, denies the allegations in Paragraph 45.**

46.     During the period of January 4, 2014, other female laborers have sought work assignments from MVP at MVP's Illinois-based dispatch offices, but on one or more occasions were not assigned to a client company because of their gender.

**ANSWER:** **MVP lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 46 and on that basis, denies the allegations in Paragraph 46.**

47. On such occasions when other female laborers similarly sought work assignments from one of MVP's Illinois-based branch offices, they were directed to put their names on sign-in sheets that indicated the order in which they had arrived.

**ANSWER:** **MVP lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 47 and on that basis, denies the allegations in Paragraph 47.**

48. On those occasions when other female laborers sought work assignments at the Illinois-based MVP branch offices, they were not assigned to work even though there were assignments at MVP's client companies for which they were qualified.

**ANSWER:** **MVP lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 48 and on that basis, denies the allegations in Paragraph 48.**

49. On many of the days when other female laborers were not present in the Illinois-based MVP branch offices, they were available for assignments at MVP's client companies but were not contacted for an assignment.

**ANSWER:** **MVP lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 49 and on that basis, denies the allegations in Paragraph 49.**

50. For many positions, male laborers received work assignments to MVP's client companies before female laborers.

**ANSWER:** **MVP denies the allegations in Paragraph 50.**

51. For many positions, male laborers were given assignments to MVP's client companies before female laborers even though the male laborers were no more qualified to perform the job.

**ANSWER:** **MVP denies the allegations in Paragraph 51.**

52.     For many positions, male laborers were given assignments to MVP's client companies before female laborers even when they arrived after the female laborers.

**ANSWER:     MVP denies the allegations in Paragraph 52.**

53.     On information, male laborers were often assigned by MVP to fill higher paying positions than female laborers.

**ANSWER:     MVP denies the allegations in Paragraph 53.**

54.     The Illinois-based MVP branch offices have a practice of retaining contact information and/or applications completed by candidates for referral for at least several months.

**ANSWER:     MVP admits that it maintains applications completed by employees and/or applicants in accordance with law. MVP denies the remaining allegations in Paragraph 54.**

55.     On information, male laborers were contacted to fill work assignments to MVP's client companies before female laborers.

**ANSWER:     MVP denies the allegations in Paragraph 55.**

56.     Male laborers were contacted for work assignments MVP [sic] to MVP's client companies before female laborers even though they were no more qualified to perform the job.

**ANSWER:     MVP denies the allegations in Paragraph 56.**

57.     Male laborers were contacted for work assignments MVP [sic] to MVP's client companies before female laborers even though they had been seeking work at MVP for less time.

**ANSWER:     MVP denies the allegations in Paragraph 57.**

58.     Plaintiffs have been, at all relevant times, equally qualified to work at MVP's client companies as male laborers who sought work at MVP and were given a work assignment at MVP's client companies.

**ANSWER:     MVP lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 58 and on that basis, denies the allegations in Paragraph 58.**

59.     Other female laborers who sought work assignments from MVP's Illinois-based branch offices were likewise equally qualified to work at MVP's client companies as male laborers who sought work at MVP and were given a work assignment at MVP's client companies.

**ANSWER:    MVP lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 59 and on that basis, denies the allegations in Paragraph 59.**

60.    MVP failed or refused to assign Plaintiffs to work assignments at MVP's client companies because of their gender.

**ANSWER:    MVP denies the allegations in Paragraph 60.**

61.    MVP failed or refused to assign other female laborers to work assignments at MVP's client companies because of their gender.

**ANSWER:    MVP denies the allegations in Paragraph 61.**

62.    MVP dispatchers failed or refused to assign Plaintiffs and other similarly situated female laborers to work at MVP's client companies because they were complying with a discriminatory request from MVP's client companies to only send male laborers to fill certain positions.

**ANSWER:    The allegations contained in Paragraph 62 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations in Paragraph 62.**

63.    MVP's client companies often expressed its [sic] preference for male laborers to fill certain positions at its [sic] facility by using the code words "heavy" to indicate a preference for a male laborer.

**ANSWER:    The allegations contained in Paragraph 63 are legal conclusions to which no answer is required.  To the extent that an answer is required, MVP denies the allegations in Paragraph 63.**

## V. CLASS ACTION ALLEGATIONS

64.    The Plaintiffs' claims are susceptible to class certification pursuant to Rule 23(a) and (b)(3), Fed. R. Civ. P.

**ANSWER:    The allegations contained in Paragraph 64 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations in Paragraph 64.**

65.     The Class is defined to include "All female laborers who sought work assignments through MVP's Illinois-based branch offices and were eligible to work at MVP's client companies at any time between January 4, 2014 and the date of judgment and who, on one or more occasion, were not assigned to work in certain positions at MVP's client companies by MVP."

**ANSWER:     The allegations contained in Paragraph 65 are legal conclusions.  To the extent that an answer is required, MVP denies that Plaintiffs have alleged an identifiable class, that Plaintiffs are adequate class representatives, that Plaintiffs can maintain a class of all MVP Illinois branch offices, and that such a class should be certified, and denies all underlying and remaining allegations.**

66.     Certification of the class and subclasses pursuant to Rule 23(a) and (b)(3) is warranted because:
   a.  This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendant is located in this judicial district.
   b.  The class is so numerous that joinder of all members is impracticable. Defendant employed in its labor pool thousands of individuals who sought work assignments through its Illinois-based branch offices from January 4, 2014 through the present.
   c.  One or more questions of law or fact are common to the class, including:
      i.   Whether MVP has engaged in a pattern or practice of denying work assignments to female laborers because of their gender;
      ii.  Whether MVP intentionally engaged in discriminatory assignments of male versus female laborers;
      iii. Whether MVP's client companies directed MVP to refrain from assigning female laborers to work in certain positions at MVP's client companies;
      iv.  Whether MVP engaged in a practice of accommodating discriminatory requests by its client companies;
      v.   Whether the conduct complained of herein constitutes a violation of Title VII;
      vi.  Whether injunctive relief is warranted against MVP;
   d.  Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' Counsel is competent and experienced in litigating discrimination and other employment class actions;
   e.  The class representative and the members of the class have been subject to, and challenge, the same practices that are being challenged by the class;
   f.  Issues common to the class predominate over issues unique to individual class members and pursuit of the claims as a class action is superior to other available methods for the fair and efficient resolution of this controversy.
   g.  Adjudication of these claims as a class action can be achieved in a manageable manner.

**ANSWER:     The allegations contained in Paragraph 66 are legal conclusions to**

**which no answer is required. To the extent that an answer is required, MVP denies the allegations contained in Paragraph 66.**

67. Pursuit of the claims set forth herein through a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

**ANSWER: The allegations contained in Paragraph 67 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations contained in Paragraph 67.**

### COUNT I
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
### Plaintiffs on behalf of themselves and a class of similarly situated female laborers as against Defendant MVP
### *Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 67 as though set forth herein.

**ANSWER: MVP hereby incorporates and realleges its Answers to Paragraphs 1 through 67 as if fully set forth herein.**

68. This Count arises under Title VII for Defendant MVP's discriminatory practices in assigning laborers to its client companies, described more fully in paragraphs 15 – 63, *supra*, resulting in disparate treatment of Plaintiffs and a class of female laborers.

**ANSWER: The allegations contained in Paragraph 68 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations contained in Paragraph 68.**

69. As described more fully in paragraphs 15 – 63, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against Plaintiffs based on her gender thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

**ANSWER: The allegations contained in Paragraph 69 are legal conclusions to which no answer is required. To the extent that an answer is required, MVP denies the allegations contained in Paragraph 69.**

70.     As described more fully in paragraphs 15 – 63, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against other similarly situated female laborers based on their gender, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

**ANSWER:     The allegations contained in Paragraph 70 are legal conclusions to which no answer is required.  To the extent that an answer is required, MVP denies the allegations contained in Paragraph 70.**

71.     As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, Plaintiffs and other similarly situated female MVP laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

**ANSWER:     The allegations contained in Paragraph 71 are legal conclusions to which no answer is required.  To the extent that an answer is required, MVP denies the allegations contained in Paragraph 71.**

72.     Defendant MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**ANSWER:     The allegations contained in Paragraph 72 are legal conclusions to which no answer is required.  To the extent that an answer is required, MVP denies the allegations contained in Paragraph 72.**

WHEREFORE, Plaintiffs and the Class respectfully pray that this Court:
A.  allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;
B.  enjoin Defendant MVP from continuing or permitting future violations of Title VII for gender discrimination against female laborers in the Class;
C.  enter a judgment in Plaintiffs and the Class' favor and against Defendant MVP for back pay damages for Plaintiffs and the Class in amounts to be determined at trial;
D.  for all reasonable attorney's fees and costs in bringing this action;
E.  for such other relief as this Court deems just and equitable.

**ANSWER:     To the extent that any answer is required to the prayer for relief contained in Count I of the Complaint, MVP denies all of the allegations in Plaintiffs' prayer for relief in its entirety and respectfully requests that this action be dismissed and a judgment**

entered in favor of Defendant and against Plaintiffs, that no relief be granted to Plaintiffs,

and that such other relief be granted to Defendant as this Court deems equitable and just.


**COUNT II**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated female laborers as against**
**Defendant MVP**
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 72 as though set forth herein.

**ANSWER:    MVP hereby incorporates and realleges its Answers to Paragraphs 1 through 72 as if fully set forth herein.**

73.    This Count arises under Title VII for Defendant MVP's policies and practices of assigning almost exclusively male laborers to fill certain positions, as described more fully in paragraphs 15 – 63, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of female MVP laborers.

**ANSWER:    The allegations contained in Paragraph 73 are legal conclusions to which no answer is required.  To the extent that an answer is required, MVP denies the allegations contained in Paragraph 73.**

74.    Defendant MVP practice of assigning almost exclusively male laborers to fill certain positions at its client companies' facilities assign has caused a significant disparate impact on Plaintiffs and other similarly situated female MVP laborers in obtaining work assignments at Defendant MVP.

**ANSWER:    The allegations contained in Paragraph 74 are legal conclusions to which no answer is required.  To the extent that an answer is required, MVP denies the allegations contained in Paragraph 74.**

75.    As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, Plaintiffs and other similarly situated female laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

**ANSWER:    The allegations contained in Paragraph 75 are legal conclusions to which no answer is required.  To the extent that an answer is required, MVP denies the**

allegations contained in Paragraph 75.

WHEREFORE, Plaintiffs and the Class respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;
B. enjoin Defendant MVP from continuing or permitting future violations of Title VII for gender discrimination against female laborers in the Class;
C. enter a judgment in their favor and against Defendant MVP for back pay damages for Plaintiff [sic] and the Class in amounts to be determined at trial;
D. for all reasonable attorney's fees and costs in bringing this action;
E. for such other relief as this Court deems just and equitable.

**ANSWER: To the extent that any answer is required to the prayer for relief contained in Count II of the Complaint, MVP denies all of the allegations in Plaintiffs' prayer for relief in its entirety and respectfully requests that this action be dismissed and a judgment entered in favor of Defendant and against Plaintiffs, that no relief be granted to Plaintiffs, and that such other relief be granted to Defendant as this Court deems equitable and just.**

**MVP denies each and every allegation of the Complaint not otherwise expressly admitted, qualified or denied herein.**

## AFFIRMATIVE DEFENSES

Without altering any of the applicable burdens of proof, and in the alternative to the denials stated above, Defendant MVP asserts the following affirmative defenses:

### First Affirmative Defense
### (Failure to State a Claim)

The Complaint, and each purported claim contained therein, fails to allege facts sufficient to state a claim upon which relief can be granted.

### Second Affirmative Defense
### (Defendant's Legitimate Non-Discriminatory Decisions)

The Complaint, and each purported claim contained therein, is barred in whole or in part because any decisions with respect to Plaintiffs' and/or alleged putative class members' employment were and/or would have been made by Defendant MVP for legitimate, non-

discriminatory, non-pretextual reasons unrelated to their gender.

### Third Affirmative Defense
**(Mixed Motive)**

Defendant MVP did not commit the acts or omissions as alleged in the Complaint, but assuming that it did, such acts or omissions would have been taken in any event for legitimate, nondiscriminatory, non-pretextual reasons.

### Fourth Affirmative Defense
**(Estoppel)**

Plaintiffs and alleged putative class members are estopped from pursuing the claims in the Complaint, and each purported claim contained therein, by reason of the Plaintiffs' and alleged putative class members' own actions and course of conduct.

### Fifth Affirmative Defense
**(Waiver)**

Plaintiffs and alleged putative class members have waived their right, if any, to pursue the claims in the Complaint, and each purported claim contained therein, by reason of their own actions and course of conduct.

### Sixth Affirmative Defense
**(Doctrine of Unclean Hands)**

The Complaint, and each purported claim contained therein, is barred by the doctrine of unclean hands.

### Seventh Affirmative Defense
**(Failure to File Timely Civil Action on Title VII Claims)**

To the extent that Plaintiffs and/or alleged putative class members make allegations or claims outside of the applicable statute of limitations, such allegations or claims are barred.

**Eighth Affirmative Defense**
**(Failure to Mitigate)**

The Complaint, and each and every purported claim alleged therein, is barred because Plaintiffs and alleged putative class members have failed to mitigate or reasonably attempt to mitigate her damages, if any, as required by law.

**Ninth Affirmative Defense**
**(Collateral Source)**

Plaintiffs' and alleged putative class members' claims for damages must be eliminated or reduced to the extent that they are, have been, or will be compensated from collateral sources (e.g. unemployment benefits).

**Tenth Affirmative Defense**
**(Legal Remedy Precludes Injunctive and Equitable Relief)**

Plaintiffs' and alleged putative class members' claims for injunctive and other equitable relief are barred because Plaintiffs and alleged putative class members have an adequate and complete remedy at law.

**Eleventh Affirmative Defense**
**(Absence of Intentional Discrimination Precludes Punitive Damages)**

Defendant MVP alleges that it has not engaged in intentional discrimination with respect to Plaintiffs and any alleged putative class members, and Defendant therefore cannot be liable for punitive damages.

**Twelfth Affirmative Defense**
**(Absence of Malice, Reckless Indifference or Fraud Precludes Punitive Damages)**

Defendant MVP alleges that it has not acted with malice, reckless indifference, or fraud toward Plaintiffs or any alleged putative class members and Defendant MVP therefore cannot be liable for punitive damages.

### Thirteenth Affirmative Defense
**(Failure to Plead Facts Sufficient to Support Punitive Damages)**

Plaintiffs and alleged putative class members are not entitled to receive punitive damages because Plaintiffs have not pled facts sufficient to support such an award.

### Fourteenth Affirmative Defense
**(Defendant's Good Faith Efforts Preclude Punitive Damages)**

Plaintiffs and alleged putative class members are not entitled to receive punitive damages because Defendant MVP undertook good faith efforts to comply with Title VII, including by making good faith efforts to enforce anti-discrimination and anti-harassment policy.

### Fifteenth Affirmative Defense
**(Good Faith Compliance With Law)**

All actions by Defendant MVP with regard to Plaintiffs and alleged putative class members, if any, were lawful and were made in good faith compliance with applicable provisions of law, rules, and regulations. Therefore, if Plaintiffs or alleged putative class members were to prevail on any of their claims, they would not be entitled to any liquidated, punitive, or other damages.

### Sixteenth Affirmative Defense
**(Plaintiffs Are Not Entitled to Class Certification)**

Defendant MVP affirmatively states that Plaintiffs cannot meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and are therefore not entitled to class certification.

### Seventeenth Affirmative Defense
**(Bona Fide Occupational Qualification)**

To the extent certain job assignments had requirements or qualifications, they were bona fide occupational qualifications that were reasonably necessary to the normal operation of MVP and/or its client companies' businesses.

### Eighteenth Affirmative Defense
**(Business Necessity)**

Insofar as any of Defendant's hiring practices or policies has had a statistically adverse impact on female job applicants, such policies or practices are nevertheless lawful because they are job-related and consistent with business necessity.

WHEREFORE, Defendant PERSONNEL STAFFING GROUP, LLC respectfully requests that this action be dismissed, and a judgment entered in favor of Defendant and against Plaintiffs, that no relief be granted to Plaintiffs, and that such other relief be granted to Defendant as this Court deems equitable and just.

Dated: October 8, 2018

Respectfully submitted,

/s/ *Michele D. Dougherty*
Elliot Richardson
Michele D. Dougherty
Korey Richardson LLP
20 S. Clark St., Suite 500
Chicago, Illinois 60603
(312) 372-7072

*Attorneys for Defendant*
*Personnel Staffing Group, LLC*